FOX, Justice.
[¶1] A Johnson County jury convicted Michael Lewis of felony possession of marijuana. On appeal, he argues that the State violated his right to confrontation when a supervisor from the state crime lab testified in place of the lab analyst who tested and weighed the marijuana. Because we conclude that Mr. Lewis did not suffer material prejudice, we affirm.
ISSUE
[¶2] Has Mr. Lewis demonstrated plain error in testimony by the supervisor of the analyst who tested and weighed the marijuana?
FACTS
[¶3] Mr. Lewis is a musician from San Antonio, Texas. In June 2016, Mr. Lewis; his manager, Ryan Garza; and their DJ, Justin Mungia drove from San Antonio to Seattle for a concert where Mr. Lewis was scheduled to perform. Mr. Garza rented a car in San Antonio to drive the three to Seattle.
[¶4] As they prepared to return to San Antonio, Mr. Lewis told Mr. Garza that he had been given five pounds of marijuana by someone he had met in Seattle which he had put in their rental car. Mr. Lewis wanted to take it to San Antonio, but Mr. Garza initially refused. After Mr. Lewis promised Mr. Garza half the marijuana, Mr. Garza allowed him to bring it back to San Antonio in the rental car. Before leaving Washington, Mr. Garza stopped in Spokane to buy marijuana, which he and Mr. Mungia shared while Mr. Lewis slept. In Sheridan, Wyoming, Mr. Lewis took over driving. About 30 minutes later, just outside Buffalo, Trooper Richard Burridge stopped Mr. Lewis for speeding.
[¶5] When Trooper Burridge approached the car, he could smell "fresh marijuana." Trooper Burridge had Mr. Lewis get out of the car first and then go to the rear of the car. When Trooper Burridge asked Mr. Lewis *776 whether they had any marijuana in the car, Mr. Lewis stated, "Ain't got no weed," but he admitted that they had smoked some marijuana back in Spokane.
[¶6] Trooper Burridge then questioned Mr. Garza, who admitted that the small amount of marijuana he purchased in Spokane belonged to him. After Trooper Burridge told Mr. Garza that he was going to search the car, Mr. Garza confessed to the five pounds of marijuana in the trunk.[1] When Trooper Burridge and his partner searched the car, they found a black trash bag with "five individual pounds of marijuana[.]" Trooper Burridge testified that "[i]t was obvious that it was marijuana to me." Agent Louey Williams with the Division of Criminal Investigation sent the drugs to Cheyenne for analysis.
[¶7] At trial, the State called Dr. Ella Kubicz, a state crime lab chemistry unit supervisor, to testify about the analysis of the five pounds of marijuana. Dr. Kubicz supervised Courtney Vito, an analyst in the crime lab, who analyzed the drugs. Dr. Kubicz testified that Ms. Vito's report, Exhibit 500, showed that the substance Agent Williams had sent to Cheyenne contained THC and weighed more than three ounces. The district court admitted Exhibit 500 over Mr. Lewis' attorney's objection that it was cumulative.
[¶8] The district court also admitted Exhibit 502, Dr. Kubicz's supervisor report. Dr. Kubicz testified:
... State's Exhibit 502, it looks like a checklist, but my work is much more detailed than putting the checkmarks on it.
I reviewed every note, collected with analysis, every spectra acquired by the instrumental analysis, and by reviewing that, I reached the forensic conclusion, and I cross-check with what Ms. Vito, the analyst in this case also came up as a conclusion.
When these two conclusions meet, I approve the issuance of this report. And I concluded all the items analyzed by Ms. Vito contain[ ] [THC].
She also testified that the lab scale printout attached to Ms. Vito's report established that the marijuana weighed more than three ounces. Dr. Kubicz signed her report, Exhibit 502, but only Ms. Vito's signature appears on Exhibit 500.
[¶9] The jury convicted Mr. Lewis of one count of felony possession of marijuana. The district court sentenced Mr. Lewis to three to five years in prison, suspended except for 270 days in jail with credit for 218 days for time served, with five years of probation. This appeal followed.
DISCUSSION
[¶10] Mr. Lewis argues that the State's admission of Exhibit 500, the lab report containing Ms. Vito's conclusions, violated his right to confrontation because Dr. Kubicz testified in place of Ms. Vito. We find it unnecessary to address the confrontation issues because we conclude that, even if such a sequence of events violates the confrontation clause, Mr. Lewis was not prejudiced by its admission. There was sufficient evidence, without Exhibit 500, that the substance was marijuana and that it exceeded the felony threshold of three ounces.
I. Standard of Review
[¶11] When the State introduced Exhibit 500 and Dr. Kubicz testified, Mr. Lewis did not argue that it violated his right to confrontation. Our review is for plain error. Larkins v. State , 2018 WY 122, ¶ 92, 429 P.3d 28, 49 (Wyo. 2018) (citation omitted). Plain error requires the defendant to establish that there was a clear violation of a clear and unequivocal rule of law, and that, absent the error, there is a reasonable probability the result would have been more favorable to him. Id. at ¶¶ 92-94, 429 P.3d at 49-50. Mr. Lewis generally agrees with this standard, but contends that when the alleged violation concerns the confrontation clause, we must presume the defendant suffered material prejudice. He relies on Bullcoming v. New Mexico , 564 U.S. 647, 663, 131 S.Ct. 2705, 2716, 180 L.Ed.2d 610 (2011). We disagree.
[¶12] In Crawford v. Washington , the United States Supreme Court held that testimonial *777 hearsay is inadmissible unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). In Bullcoming , the Court reaffirmed that forensic reports "created specifically to serve as evidence in a criminal proceeding" are testimonial and that "surrogate testimony" cannot be a substitute for the analyst who performed the testing. 564 U.S. at 651-52, 131 S.Ct. at 2709-10. However, Bullcoming did not hold that confrontation clause violations are structural error (deemed prejudicial). The Court "express[ed] no view on whether the error ... was harmless," stating that its opinion did not "impede[ ] a harmless-error inquiry on remand." Id. , 564 U.S. at 668 n.11, 131 S.Ct. at 2719 n.11. Since Crawford , this Court has repeatedly applied the plain-error test, with its standard prejudice component, when reviewing confrontation clause issues. See, e.g. , Villarreal v. State , 2017 WY 81, ¶ 10, 398 P.3d 512, 516 (Wyo. 2017) ; Anderson v. State , 2014 WY 13, ¶ 20, 317 P.3d 1108, 1115-16 (Wyo. 2014) ; Bush v. State , 2008 WY 108, ¶ 29, 193 P.3d 203, 210-11 (Wyo. 2008). Similarly, the United States Supreme Court has made clear that confrontation clause violations are subject to a harmless error analysis:
Harrington [v. California , 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) ], which we have expressly reaffirmed on more than one occasion, see, e.g. , Schneble v. Florida , [405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) ]; Brown v. United States , 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), demonstrates that the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case.
Delaware v. Van Arsdall , 475 U.S. 673, 682, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674 (1986) (citing Harrington , 395 U.S. 250, 89 S.Ct. 1726 ). When a defendant does not raise a confrontation clause issue in the trial court, our review is limited to a search for plain error, which includes a determination of whether the error resulted in a reasonable probability that the result would have been more favorable.
II. Mr. Lewis has not demonstrated material prejudice
[¶13] Mr. Lewis must establish each element of our plain error test. See, e.g. , Garrison v. State , 2018 WY 9, ¶ 13, 409 P.3d 1209, 1213 (Wyo. 2018). "Failure to establish each element ... precludes a finding of plain error." See, e.g. , Jackson v. State , 891 P.2d 70, 74 (Wyo. 1995). Where appropriate, we address the prejudice element of the plain error test first, without addressing whether there has been a violation of a clear and unequivocal rule of law. Nielsen v. State , 2018 WY 132, ¶ 23, 430 P.3d 740, 748 (Wyo. 2018) ; Dumas v. State , 2018 WY 120, ¶ 28, 428 P.3d 449, 456 (Wyo. 2018) ; Miller v. State , 2015 WY 68, ¶ 8, 350 P.3d 264, 266 (Wyo. 2015) ; see also Schoeller v. Bd. of Cty. Comm'rs of Park Cty. , 568 P.2d 869, 879 (Wyo. 1977) ("[W]here a constitutional question is raised, if the record also presents some other and clear ground upon which the court may rest its judgment, that course will be adopted ... until that day when ... a decision upon such question must be met head-on."). We will take this approach in Mr. Lewis' case. Even if we disregarded Dr. Kubicz's testimony and Exhibit 500, there is not a reasonable probability the jury would have concluded that the substance found in the trunk of the rental car Mr. Lewis was driving was not marijuana in excess of three ounces.
[¶14] Mr. Garza referred to himself as "more than a social smoker," who "smoke[s] a lot" and is an "avid smoker." When he allowed Mr. Lewis to bring the marijuana back to Texas in the rental car, he did so because Mr. Lewis agreed to give him half and that that was "a lot of marijuana to get without having to pay for it." Mr. Garza admitted that he had "handle[d] the marijuana" and saw that there were "five packs" in the trunk. In addition, Mr. Garza had already pleaded guilty to possessing the same five pounds of marijuana and been sentenced for that offense.
[¶15] Trooper Burridge testified about his training and experience in dealing with marijuana. When he opened the trunk of the car, he found "five individual pounds of marijuana" in a trash bag. Agent Williams, whose *778 "major function[ ] is drug investigation," opened the bags while on the witness stand and identified their contents as "containing marijuana." While the jury deliberated, they had access to the bags of marijuana and could inspect them during their deliberations.
[¶16] Expert testimony is not always required to identify a substance as marijuana or the weight of the substance. See Regan v. State , 2015 WY 62, ¶¶ 34-35, 350 P.3d 702, 709 (Wyo. 2015) ; Leyva v. State , 2005 WY 22, ¶ 11, 106 P.3d 873, 876-77 (Wyo. 2005). In Urrutia v. State , 924 P.2d 965, 968 (Wyo. 1996), we affirmed the defendant's conviction for possession with intent to deliver marijuana based on the following circumstantial evidence:
1) [Mr. Urrutia] admitted he used marijuana; 2) he acknowledged he was present when marijuana sales were being completed; 3) a witness who was an experienced drug user testified he knew the substance he delivered to Mr. Urrutia was marijuana and small amounts of the substance were sold for substantial amounts of money.
Shumaker v. State , 2007 WY 143, ¶ 11, 167 P.3d 11, 13 (Wyo. 2007) (discussing Urrutia ).
[¶17] The testimony of Mr. Garza, Trooper Burridge, and Agent Williams, along with the introduction of the marijuana into evidence, was sufficient evidence for the jury to conclude that the substance found in the trunk of the car was more than three ounces of marijuana.[2] Even if we disregard Dr. Kubicz's testimony and Exhibit 500, we cannot conclude that there is a reasonable probability the result would have been more favorable.
CONCLUSION
[¶18] We conclude that Mr. Lewis has failed to establish that Dr. Kubicz's testimony and the admission of Exhibit 500 was plain error.
[¶19] Affirmed.

Mr. Garza received a deferred sentence for possession of a controlled substance and was put on probation for 4 years. In exchange, he agreed to testify against Mr. Lewis.

Moreover, during his closing argument, Mr. Lewis' defense strategy was that he was not in "possession" of the drugs: "[T]he only person that ever exercised dominion and control over the substance was Mr. Garza[.]" He never argued at trial that the substance was not marijuana or that it did not weigh more than three ounces.